UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CJ GRISHAM,<br>　*Plaintiff*,<br><br>vs.<br><br>CITY OF ARANSAS PASS,<br>MAYOR RAM GOMEZ,<br>　In his personal and official capacity, and<br>CHIEF ERIC BLANCHARD,<br>　In his personal capacity,<br>　*Defendants* | §§§§§§§§§§§§ | CIVIL ACTION NO.<br>2:24-cv-00055<br><br><br><br><br>Hon. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### COMPLAINT

Plaintiff CJ Grisham (herein referred to as "Mr. Grisham") brings this Complaint against Defendants City of Aransas Pass, Texas; Ram Gomez (herein referred to as "Defendant Gomez"), Former Aransas Pass Mayor, in his personal and official capacities; and Eric Blanchard (herein referred to as "Defendant Blanchard"), Former Aransas Pass Chief of Police, in his personal and official capacities, and in support thereof allege the following upon information and belief:

### INTRODUCTION

1. On January 16, 2024, Plaintiff attended the Aransas Pass City Council meeting to address the history of constitutional violations specifically related to a client's protected speech. While quoting case law on the issue of free speech, Defendant Gomez ordered Defendant Blanchard to remove Plaintiff. Defendant Blanchard then told Plaintiff to "stop talking

and just sue me. If you think you're so right, just sue me." Plaintiff now effectuates Defendant Blanchard's wishes.

2. This case is brought to enforce and protect fundamental constitutional rights of United States citizens, particularly in Aransas Pass, Texas.

3. This action is a civil rights action under the First and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, challenging Defendants actions and conduct that restricts Plaintiff's right to freedom of speech in a public quorum.

4. Defendants, jointly and separately, acted in a manner that suppresses the free expression of speech by prohibiting profanity or speaking against the character of any city officials in a public city council meeting.

5. Defendant City has a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," in the form of "Rules of Decorum" which "inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978).

6. Profanity is protected speech under the Free Speech Clause of the First Amendment.

7. Plaintiff is a civil rights attorney who frequently attends city council meetings to address matter of public concern regarding unconstitutional policies and "rules of decorum."

8. Plaintiff has a right to be free from illegal searches and seizures.

9. Plaintiff seeks a declaration that Defendants violated their clearly established constitutional right, as set forth in this Complaint; a declaration that Defendants' restrictions on Plaintiff's speech violates the U.S. Constitution and 43 U.S.C. § 1983, as set forth in this Complaint; a preliminary and permanent injunction enjoining the enforcement of Defendants' speech restriction, as set forth in this Complaint; damages

for the past loss of Plaintiff's constitutional rights; and attorney's fees (should Plaintiff hire an attorney at some point during litigation), expenses, and reasonable costs of litigation, pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

10. This action arises under the Constitution and laws of the United States of America.

11. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

12. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

13. Plaintiff's claims for damages are authorized by 18 U.S.C. § 242 and 42 U.S.C. § 1983.

14. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in San Patricio County, Texas.

## PLAINTIFF

15. Plaintiff, Mr. Grisham, is a citizen of Temple, Texas, who practices law throughout the State of Texas.

16. Mr. Grisham has a substantial interest in protecting the rights of his clients during public meetings held by City Council.

## DEFENDANTS

17. Defendants, collectively, are government officials and entities.

18. Defendants operate in their official and personal capacities in Aransas Pass, Texas.

19. Defendant Mr. Gomez is the former Aransas Pass Mayor, and is being sued in his personal and official capacities..

20. Defendant Mr. Blanchard is the former Aransas Pass Chief of Police, and is being sued in his personal and official capacities.

21. Defendants, as government officials and entities, are bound to the United States Constitution.

22. Defendants, as government officials and entities, are not permitted to establish rules in a quorum that violate the United States Constitution.

23. Every citizen has the constitutional right to use expressive speech.

## STATEMENT OF FACTS

### I.     December 4, 2023, Aransas Pass City Council Meeting

24. Defendant City of Aransas Pass has a policy called "Rules of Decorum" that is prima facie evidence of a policy, practice, or procedure to violate the rights of citizens by punishing protected speech.

25. On December 4, 2023, Plaintiff's client, Mr. Jason Followell, attended the Aransas Pass City Council meeting to discuss several issues of public concern regarding unlawful expenditures by Defendant Blanchard.

26. Mr. Followell was allotted 3 minutes to voice his concerns.

27. During Mr. Followell's public comments, he referred to Defendant Kelley as a "fucking moron" for the things he said about Mr. Followell on social media.

28. Defendant Gomez immediately cut off Mr. Followell and told him "we're not going to discuss that" and "if you continue cussing, you'll be escorted out."

29. Mr. Followell retorted that he has a right to express his opinions of public officials.

30. Defendant Gomez ordered Aransas Pass police officers to escort Mr. Followell out of the meeting because "I'm not gonna put up with your foul mouth."

31. As Mr. Followell was being escorted out of City Hall under threat of arrest, Defendant Gomez exclaimed that "I'm not going to put up with any of that. Ain't nobody need [sic] to be cussing anybody out. That's ridiculous behavior."

32. Mr. Followell hired Plaintiff for legal advice on the matter of what speech is protected, and to procure a presentation to Defendants (excluding Defendant Cochran-May) on the constitutional rights of citizens during public comments and the constitutional and statutory limitations of Defendants to silence, censor, or otherwise restrict the speech of speakers during public comment.

## II.     January 16, 2024, Aransas Pass City Council Meeting

33. Mr. Grisham attended the Aransas Pass City Council meeting on January 16, 2024.

34. At the meeting, Mr. Followell spoke first and used similar language to that used the prior month.

35. Defendants threatened to arrest Mr. Followell if he did not leave based solely on the content of his speech.

36. Mr. Grisham rose to speak with his prepared speech after Mr. Followell was forced to leave

37. Mr. Grisham was allotted 3 minutes to voice his concerns.

38. Mr. Grisham prepared a list of cases pertaining to free speech that contained profanity which he used during his speech.

39. Mr. Grisham's use of profanity was quoted from selected cases that were contained in his prepared speech on a matter of public interest – the rules of decorum – thus is classified as expressive speech and protected under the First Amendment to the United States Constitution.

40. The City of Aransas Pass is mandated to comply with the First and Fourteenth Amendment to the United States Constitution.

41. While Mr. Grisham was explaining to the Council that "if I want to call the mayor a tyrant, I can say that. If I think the City Manager is a piece of shit, I can say that. It's called expressive speech."

42. It should be noted that at no time did Mr. Grisham ever actually call Defendant Gomez a "tyrant" or Defendant Edwards a "piece of shit."

43. Defendant Gomez threatened to have Mr. Grisham "escorted out" and then ordered Defendant Blanchard to escort Mr. Grisham out of the meeting prior to the end of his three minutes.

44. Mr. Grisham specifically inquired as to whether his time was up, which it was not.

45. Defendant Blanchard attempted to appeal to Defendant Gomez regarding the exchange between him and Mr. Grisham to no avail.

46. Defendant Blanchard informed Mr. Grisham that he was being told to leave for "violating the rules of decorum."

47. Defendant Blanchard then threatened to arrest Mr. Grisham for disorderly conduct if he did not leave.

48. Defendant knew or should have known that the disorderly conduct statute is unconstitutional except as it relates to fighting words.[1]

49. Upon duress from the threat of arrest, Mr. Grisham had no choice but to stop his speech and leave.

---

[1] *See Jimmerson v. State*, 561 S.W.2d 5,7 (Tex. Crim. App. 1978); *See also Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S. Ct. 766 (1942); *Gooding v. Wilson*, 405 U.S. 518, 92 S. Ct. 1103 (1972); and *Lewis v. New Orleans*, 415 U.S. 130 (1974).

50. On the way out, Mr. Grisham called Defendant Blanchard a "cock mother-fucker" for violating his rights and forcing him out of the meeting.

51. The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. "Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."[2]

### III. RETALIATORY ACTIONS

52. On January 19, 2024, Defendant Blanchard filed a false bar complaint against Mr. Grisham with false claims that Mr. Grisham "was hired to disrupt governmental activities and seek to get himself and his client arrested" in an attempt to have him disbarred.

53. Defendant Blanchard falsely accused Mr. Grisham of "believe[ing] being arrested, he or his client or both, would create enough evidence to support a successful lawsuit against officials and the City."

54. While Defendant Blanchard's statement was patently false at the time, this filing is evidence of Defendant Blanchard's prophesy coming true since Mr. Grisham had no desire to file this suit until being tried and retried for constitutionally protected activities and having to spend thousands of dollars in his defense.

55. Had Mr. Grisham truly wanted a lawsuit, he would have filed it long ago.

56. The only recourse citizens like Mr. Grisham and Mr. Followell have when their rights are being violated is to file this type of cause of action. Unlike Defendants, we can't throw corrupt officials in jail and "let the courts deal with them."

---

[2] *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949).

57. The State Bar of Texas dismissed the complaint as baseless, and Defendant Blanchard did not appeal.

58. On March 1, 2024, Mr. Grisham filed a lawsuit against Defendants and others on behalf of Mr. Followell.

59. The Complaint was served on Defendants on March 4, 2024, during the Aransas Pass City Council meeting.

60. On or about March 5, 2024, Defendant Blanchard filed a sworn statement alleging that Mr. Grisham "hinder[ed] an official proceeding, namely, a City of Aransas Pass Council Meeting, by violent and tumultuous behavior or disturbance in that [Mr. Grisham] was yelling aggressively while using foul, obscene, and vulgar language."

61. County Attorney Cochran-May then filed an official complaint against Mr. Grisham alleging that Mr. Grisham "hinder[ed] an official proceeding, namely, a City of Aransas Pass Council Meeting, by violent or tumultuous behavior or disturbance in that the defendant was yelling aggressively and physically pounding on the podium with his fist while using foul and vulgar language."

62. County Attorney Cochran-May knew or should have known that Mr. Grisham never engaged in such conduct – although such conduct is protected speech even if true – because everything was captured on video to which she had access and possession.

63. Defendant Blanchard and County Attorney Cochran-May knew or should have known that such accusations were blatantly false and would result in criminal charges.

64. Mr. Grisham was charged by County Attorney Cochran-May with a violation of Tex. Penal Code 38.15, Hindering Proceedings by Disorderly Conduct, a Class A Misdemeanor, on or about March 13, 2025.

65. Mr. Grisham proceeded pro se in his defense and filed several motions to quash the information.

66. On or about January 3, 2025, County Attorney Cochran-May refiled downgraded, fraudulent charges against Mr. Grisham under Tex. Penal Code 42.05, Disrupting Meeting or Procession by verbal utterance, a Class B Misdemeanor.

67. On November 3, 2025, Mr. Grisham's trial began in San Patricio County Court 2.

68. On November 4, 2025, at approximately 4:45 p.m., the jury notified the judge that they could not reach a unanimous verdict.

69. On November 5, 2025, at approximately 9:00 a.m., the judge issued the jury an *Allen* charge to continue deliberations and try to reach and agreement.

70. The jury was unable to reach a verdict and at approximately 10:30 a.m., the judge ruled the trial a mistrial.

71. Counsel were able to speak with the jury to determine that the verdict was 5-1 in favor of Not Guilty, with a sole juror stating that she thought Mr. Grisham and Mr. Followell just went to the meeting to cause problems, exposing that her decision was not based on the law, but her personal feelings.

72. On November 13, 2025, Mr. Grisham was notified that County Attorney Cochran-May was going to retry the malicious prosecution of him despite the overwhelming jury decision of Not Guilty.

73. As a result of the false charges, the Board of Law Examiners has kept Mr. Grisham on a "probationary license," affecting his ability to make a living as an attorney.

74. Mr. Grisham has more than $8,000 in expenses defending himself against the malicious prosecution against him, not including the lost wages from not being able to work on client matters in defense of himself.

75. County Attorney Cochran-May knew that there was not probable cause to make the arrest because the speech in question was protected.

76. County Attorney Cochran-May continues to prosecute the losing case against Mr. Followell and Mr. Grisham because she is friends with Defendant Blanchard and his wife.

77. Defendant Blanchard now works as the Police Chief of the City of Sinton Police Department, the same city in which County Attorney Cochran-May works, taking over after the new charges against Mr. Grisham were filed.

78. Because Mr. Grisham did not want to be arrested, he refrained from attending further city council meetings for fear of being retaliated against for his speech until Defendants were no longer officials of the City.

**FIRST CLAIM FOR RELIEF**
**(Freedom of Speech- First Amendment**
**42 U.S.C. 1983)**
**(against all Defendants)**

79. Plaintiff hereby incorporates by reference all stated paragraphs.

80. Defendants have deprived Plaintiff of his right to engage in protected speech in violation of the Free Speech Clause of the First Amendment, and in fact criminalized protected speech, as applied to the states and their political subdivisions under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

81. Defendants restriction on Plaintiff's speech is content and viewpoint based, in violation of the First Amendment's Free Speech Clause.

82. Profanity is protected speech under the Free Speech Clause of the First Amendment.

83. Defendants' true purpose for their actions at issue was to silence the viewpoint of the Plaintiff that the government officials were abusing their powers and violating the rights of citizens who speak during public comment.

84. This true purpose for the Defendants' actions to silence disfavored viewpoints is a violation of the Free Speech Clause of the First Amendment.

85. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered irreparable harming, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief, as well as damages.

## SECOND CLAIM FOR RELIEF
### (Retaliation, 42 U.S.C. 1983)
### (against all Defendants)

86. Plaintiff hereby incorporates by reference all previous paragraphs.

87. Plaintiff spoke at Aransas Pass City Council meeting to discuss and educate the Council on matters of public concern regarding Defendants' actions and policies.

88. Plaintiff was engaged in constitutionally protected activities under the First Amendment.

89. Plaintiff's right to express himself during citizen comments on matters of public concern while using colorful and sometimes profane language outweighs the government's interest in the efficient provision of public services because the three minutes allotted to citizens are theirs and their alone, and do not interfere with the Aransas Pass City Council's ability to administer their duties nor interrupt or interfere with a public meeting.

90. In response to Plaintiff's protected speech, Defendants engaged in retaliatory actions by kicking him out of a public meeting and then charging him with false charges based on protected speech.

91. Defendants' actions resulted in a clear chilling of a person of ordinary firmness from speaking at meetings for fear of being prosecuted.

92. Defendants' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct.

93. As a direct and proximate cause of Defendants' retaliatory actions, Plaintiff suffered irreparable harm, including the loss of his Constitutional rights, entitling him to declaratory and injunctive relief, as well as damages.

## THIRD CLAIM FOR RELIEF
### (Malicious Prosecution)
### (against Defendant Blanchard)

94. Plaintiff hereby incorporates by reference all stated paragraphs.

95. Defendants conspired to commence a criminal prosecution against Plaintiff.

96. Defendant initiated the procurement of that prosecution by filing a complaint with County Attorney Cochran-May.

97. County Attorney Cochran-May knew or should have known that the alleged actions of Mr. Grisham comprised protected speech.

98. The charges against Mr. Grisham were for protected speech.

99. Defendant Blanchard filed said charges with malice against Mr. Followell for having the audacity to criticize Defendant Blanchard and then filing a federal lawsuit against him for violations of Mr. Followell's rights.

100. As a direct and proximate cause of Defendant Blanchard's despicable conduct, Mr. Followell was damaged by having false charges against him, soiling his good name, and having to spend money to hire an attorney to defend against the malicious prosecution.

### FOURTH CLAIM FOR RELIEF
### (Municipal Liability 42 U.S.C. 1983)

101. Defendants' actions, and the actions of the City of Aransas Pass, demonstrate a policy, practice, or custom to retaliate against Plaintiffs for engaging in their protected First Amendment activity. Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprive Plaintiff of his right to be free from retaliation for protected conduct.

102. At all relevant times, Plaintiff had a clearly established right to be free from unlawful policies, practices, and customs, as well as a right to petition for redress of grievances.

103. Defendant City was aware of Defendant Blanchard's and Gomez's retaliatory conduct and did nothing to prevent it. In fact, Defendant City encouraged and added to it. Defendant City showed a deliberate indifference for the constitutional rights of Plaintiff.

104. Defendant City had a copy of one or more examples of videos and other evidence of Defendant Blanchard's and Gomez's activities, but did nothing to stop their conduct. In fact, Defendant City encouraged and demanded it.

105. Defendant City showed a deliberate indifference and ratified Defendant Blanchard's and Gomez's conduct.

106.As a direct and proximate result of Defendant City's unlawful actions, Plaintiff was harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A) A Declaration that Defendants' conduct, policies, practices, and custom, written or unwritten, that allow for warrantless searches, criminal trespass warnings to be issued, and threats of arrest for protected speech, are in retaliation for exercising his Constitutional rights, violate the First and Fourth Amendments to the United States Constitution;

B) Injunctive relief barring Defendants' conduct and from maintaining their policies, practices, and custom of allowing and encouraging warrantless searches, criminal trespass warnings to be issued, and threats of arrest for protected speech, in retaliation for exercising Constitutional rights, which is in violation of 42 U.S.C. § 1983;

C) Damages for retaliation by Defendants for Plaintiff's exercise of their First Amendment rights of free expression and petitioning for the redress of grievances, as the Court finds appropriate, from one or more Defendants, jointly and severally;

D) Punitive damages from one or more Defendants in the amount of $750,000;

E) Pre-judgment and post-judgment interest from one or more Defendants;

F) Reasonable attorney's fees and costs of this action if Plaintiff decides through the course of this litigation to hire an attorney(s); and

G) Any such other relief as appears just and proper.

Respectfully submitted,

LAW OFFICES OF CJ GRISHAM, PLLC



CJ Grisham
Texas State Bar no. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
P:  254-405-1726

*Filing as Pro Se Attorney of Record*